UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| WILLIE LEE LINNEAR | )   No. 07 B 19131 |
| | ) |
| Debtor. | ) |
| | ) |

## MEMORANDUM OPINION ON
## OBJECTION TO CONFIRMATION

This proceeding relates to the Chapter 13 bankruptcy case filed by Willie Lee Linnear ("Debtor"). On November 7, 2007, Ford Motor Credit Company LLC ("Ford"), filed an objection to confirmation of the Debtor's modified Chapter 13 plan, dated November 27, 2007 (the "Plan"). On December 12, 2007, Ford amended its objection to confirmation. The parties filed briefs in another case, In re Sterling Marquette Wilson and Tammy Lynn Wilson, Case No. 07 B 17012, which address the same objections as Ford raises in this case. Each party waived its right to offer additional evidence on the issues raised in the objection.

Ford objects to two provisions of the Debtor's Plan.[1] Ford first objects to Section F of the Debtor's Plan, which provides that the trustee pay creditors in an order of priority. (Plan § F).

---

[1] In paragraph 8 of Ford's amended objection, Ford argues that the Debtor's Plan would allow the Debtor to obtain a release of Ford's lien and a discharge of personal liability without Ford receiving full payment on its secured claim. Ford withdrew this argument, however, because Section G.4 of the Debtor's Plan provides that "[t]he plan shall not be deemed completed until all secured claims have been paid in full with interest as provided for in the plan." (Modified Chapter 13 Plan, dated 11/27/07 § G.4). As a result, the Debtor could not obtain a release of Ford's lien and a discharge without full payment to Ford on its secured claim.

1

The first in the order of priority is the trustee's fee, next are the current mortgage payments, and third are the payments on Ford's secured claim. Ford argues that the Debtor cannot separately classify secured claims and states that it should be in the same priority level as the mortgage payments. Ford also argues that Section F of the Debtor's Plan may result in a lack of adequate protection to Ford. Second, Ford objects to Section E.2 of the Debtor's Plan, which provides that the trustee shall increase or decrease current mortgage payments upon notice from the mortgage holder. (Plan § E.2). Ford argues that it should receive notice of any change in payments to the mortgage holder and an opportunity to object to such change. Ford also asserts that an increase in payments to the mortgage holder may result in a lack of adequate protection for Ford. Ford's objections to confirmation are overruled except as to Ford's request that it receive notice of any changes in payments to the mortgage holder under Section E.2 of the Debtor's Plan.

## JURISDICTION AND VENUE

This Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334. The case has been referred to this Court under Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(L). Venue is proper under 28 U.S.C. § 1409(a).

## UNDISPUTED FACTS

1. On October 16, 2007, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. The Debtor also filed his Chapter 13 plan on that date.

2. Ford is a creditor of Debtor with respect to a debt secured by a 1998 Buick Riviera, said vehicle has a net remaining balance of $9,516.11 at 25.15% interest.

3. On November 27, 2007, the Debtor filed a modified Chapter 13 plan (the "Plan").

4. Section E.2 of the Debtor's Plan states:

> 2. *Current mortgage payments.* Payable according to the terms of the mortgage, as set forth below, beginning with the first payment due after the filing of the case. Each of these payments shall be increased or decreased by the trustee as necessary to reflect changes in variable interest rates, escrow requirements, or similar matters; the trustee shall make the change in payments as soon as practicable after receipt of a notice of the change issued by the mortgage holder, but no later than 14 days after such receipt. The trustee shall notify the debtor of any such change at least 7 days before putting the change into effect. Any current mortgage payment made by the debtor directly to the mortgagee shall be deducted from the amounts due to be paid to the trustee under this plan.

(Plan § E.2).

5. The Debtor has a mortgage loan from Wells Fargo. The Plan provides for a monthly payment to Wells Fargo of $948. (Plan § E.2(a)).

6. Section E.3 of the Plan provides for fixed monthly payments of $474 to Ford. (Plan § E.3).

7. Section D.1 of the Plan requires the Debtor to pay the trustee $1,965 per month for sixty months. (Plan § E.3).

8. Section F of the Debtor's Plan states as follows:

> **F. Priority.** The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority, with claims in a given level of priority reduced proportionately in the event of a deficiency in plan payments: (1) trustee's authorized percentage fee; (2) current mortgage payments; (3) secured claims listed in Section E.3; (4) priority claims of the debtor's attorney; (5) mortgage arrears; (6) priority claims other than those of the debtor's attorney; (7) specially classified non-priority unsecured claims; and (8) general unsecured claims.

(Plan § F).

9. Any facts contained in the discussion below shall constitute additional undisputed facts.

## DISCUSSION

Ford objects to two separate provisions of the Debtor's Plan. First, Ford objects to Section F of the Debtor's Plan, which creates an order of priority for payment to creditors. Second, Ford objects to Section E.2 of the Debtor's Plan, which requires the trustee to increase or decrease payments to the Debtor's mortgage holder to reflect changes in variable interest rates, escrow requirements, or other similar matters.

### Section F of the Debtor's Plan

First, Ford objects to Section F of the Debtor's Plan for two different reasons. Section F requires the trustee to pay amounts owed to creditors in the following order of priority: first, the trustee's authorized percentage fee; second, the current mortgage payments; and third, payments to secured creditors listed in Section E.3. Payments to Ford are in this third priority level. Ford's first argument is that Section F violates § 1322(a)(3) of the Bankruptcy Code because it fails to provide the same treatment within a particular class. Ford asserts that it is in the same class as Wells Fargo as they are both secured creditors, therefore, payments to Ford should be in the second priority level with the payments to Wells Fargo. Ford states that the Debtor has no authority for classifying secured creditors at different priority levels. Second, Ford argues that the priority levels in Section F of the plan may result in a lack of adequate protection to Ford under 1325(a)(5)(B)(iii)(II).

Conversely, the Debtor argues that the Bankruptcy Code does not prohibit different priority levels among secured creditors. Moreover, the Debtor states that because each secured claim is unique, the Debtor must classify each secured claim separately. The Debtor cites the case of In re Whitfield in support of his position. 290 B.R. 302 (Bankr. E.D. Mich. 2003).

Addressing Ford's adequate protection argument, the Debtor argues that it is unlikely that the order of priority will leave Ford without adequate protection for its collateral. The Debtor indicates that his payments to Wells Fargo are only $948 of his total payment of $1,965. As a result, the Debtor argues that there is a substantial cushion over the amount owed to Wells Fargo. Thus, the Debtor states that it is unlikely that Ford will suffer from a lack of adequate protection by being third priority rather than second priority. Finally, the Debtor asserts that if Ford is lacking adequate protection at some point in the future as a result of its third priority position, it can move to modify the automatic stay.

Section 1322(a)(3) of the Bankruptcy Code states "[t]he plan shall–.

. (3) if the plan classifies claims, provide the same treatment for each claim within a particular class." 11 U.S.C. § 1322(a)(3). Subsection (b) of § 1322 states "[s]ubject to subsections (a) and (c) of this section, the plan may– (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated." 11 U.S.C. § 1322 (b)(1). While § 1322(b)(1) specifically allows classification of unsecured claims and prohibits unfair discrimination against a class of unsecured claims, the Bankruptcy Code is silent regarding such issues as they relate to secured claims. The Debtor cites In re Whitfield as authority for his separate classification of secured claims. 290 B.R. 302. In that case, the secured creditor objected to a provision of the debtor's plan which classified the secured creditor and the mortgage holder in different classes and treated them differently. Id. at 303. The secured creditor argued that the debtor had to treat all secured creditors the same under § 1322(a)(3). Id. at 304. The opinion rejected the secured creditor's argument and stated that a debtor usually places each secured claim in its own class. Id. A

5

debtor must create a separate class for each secured creditor because each creditor has unique collateral, requires different monthly payments, and charges different interest rates. Id. Other opinions also support the Debtor's position that secured creditors can, and usually must, be classified separately. See Bank One, NA v. Leuellen (In re Leuellen), 322 B.R. 648, 657-58 (S.D. Ind. 2005); In re Powell, 15 B.R. 465, 477-78 (Bankr. N.D. Ga. 1981); In re Jones, 101 B.R. 593, 594 (Bankr. W.D. Mo. 1989).

Section 1322(b)(2) of the Bankruptcy Code provides additional support for allowing the separate classification of secured creditors. Section 1322(b)(2) is a special provision for home mortgage lenders. It states:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> . . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). This provision provides a justification for debtors to treat home mortgage lenders differently than other secured creditors.

It is held that a debtor may create different classes of secured creditors. Thus, the priority levels in Section F of the Debtor's Plan do not violate § 1322(a)(3) or any other provision of the Bankruptcy Code. Ford's objection to Section F because it classifies Ford separately from Wells Fargo is overruled.

Ford's second argument against Section F of the Debtor's Plan relates to adequate protection under § 1325(a)(5)(B)(iii)(II). The Debtor's Plan must meet the requirements of § 1325 in order to be confirmed. Section 1325(a)(5) of the Bankruptcy Code sets out the

requirements for confirmation of a debtor's plan as related to secured creditors. It states as follows:

> (a) Except as provided in subsection (b), the court shall confirm a plan if–
>
> . . . .
>
> (5) with respect to each allowed secured claim provided for by the plan–
> (A) the holder of such claim has accepted the plan;
> (B) (i) the plan provides that–
> (I) the holder of such claim retain the lien securing such claim until the earlier of–
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; and
> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if–
> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
> (C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C. § 1325(a)(5).

In this case, Ford argues that its third level of priority under Section F of the Debtor's Plan may result in a lack of adequate protection under § 1325(a)(5)(B)(iii)(II). Ford has not offered, however, any evidence that its payment of $474 under the Plan is not enough to provide adequate protection. Nor has Ford moved to modify the automatic stay on the basis of lack of adequate protection. Rather Ford argues that the order of priority in Section F of the Plan may

deny Ford adequate protection in the future. Section 1325(a)(5) does not require denial of a plan, however, for the possibility of lack of adequate protection in the future. The priority levels in Section F of Debtor's Plan do not deny Ford adequate protection. The Debtor's Plan complies with § 1325(a)(5). The Plan provides for equal monthly payments of $948 to Wells Fargo and equal monthly payments of $474 to Ford. Ford's objection that Section F of the Debtor's Plan does not provide Ford with adequate protection is overruled.

### Section E.2 of the Debtor's Plan

Ford's second argument in its objection to confirmation relates to Section E.2 of the Debtor's Plan. Section E.2 of the Debtor's Plan requires the trustee to increase or decrease payments to the mortgage holder to reflect changes in variable interest rates, escrow requirements, or similar matters. The mortgage holder must notify the trustee of the need for a change in payments and the trustee then modifies the payments accordingly. Ford objects to Section E.2 because it does not provide notice to Ford if there is a change in payments to the mortgage holder, Wells Fargo, nor does it provide Ford an opportunity to object to such change in payments. Ford asserts that Section E.2 allows the Debtor to modify his Plan without meeting the requirements of § 1329 of the Bankruptcy Code, which addresses the modification of a plan after confirmation. Finally, Ford argues that an increase or decrease in payments to Wells Fargo under Section E.2 may cause Ford to suffer a lack of adequate protection.

The Debtor argues that if a mortgage payment increase at some point in the future denies Ford adequate protection, Ford could file a motion for relief from stay at that time. Furthermore, the Debtor again points to the substantial cushion in the plan payments; Wells Fargo is to receive $948 of the Debtor's $1,965 monthly payment. Finally, the Debtor asserts that the possibility

8

that Ford may lack adequate protection in the future is not a basis to deny confirmation.

Ford's argument that Section E.2 should provide notice to Ford has merit. Ford should receive notice of a change in the payment amount to Wells Fargo under Section E.2 of the Debtor's plan. An amendment to one creditor's claim which could effect the adequate protection rights of another creditor's claim should be noticed. The Debtor must add a provision to Section E.2 of his Plan which provides notice to Ford's attorney if payments to Wells Fargo are increased or decreased. Ford's argument that an increase or decrease under Section E.2 of the Debtor's Plan may result in a lack of adequate protection is rejected, however, because Ford has not offered any proof that it currently lacks adequate protection. All other objections of Ford are overruled.

## CONCLUSION

For the foregoing reasons, Ford's objections to confirmation are overruled except as to Ford's request that the Debtor amend his Plan to provide for notice to Ford if payments to the mortgage holder, Wells Fargo, are increased or decreased pursuant to Section E.2 of the Debtor's Plan. The Debtor must amend his Plan to provide notice to Ford of any changes in the payments to Wells Fargo under Section E.2 of the Debtor's Plan.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Entered this 29th day of January 2008

9